# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**REBECCA MAE GILLIAM,**

    **Plaintiff,**

    v.                                                 Case No.  05-2038-JWL

**USD #244 SCHOOL DISTRICT, et al.,**

    **Defendants.**

_____

**MEMORANDUM AND ORDER**

This lawsuit arises from alleged teacher-on-student harassment of plaintiff Rebecca Mae Gilliam while she was a high school student in Burlington, Kansas.  The defendants include the teacher who allegedly harassed her, the school district, and school administrators.  Plaintiff asserts a claim under Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*, a substantive due process claim under 42 U.S.C. § 1983, and state law tort claims.  This matter is currently before the court on the defendants' motions to dismiss for failure to state a claim upon which relief can be granted (Docs. 32, 43 & 49).  The court will construe these as motions for judgment on the pleadings because they were filed after defendants filed their answers to plaintiff's complaint.  For the reasons explained below, the court will grant these motions in part and deny them in part.  Specifically, the court will dismiss plaintiff's § 1983 individual capacity claims on the grounds that the individual defendants are entitled to qualified immunity on this claim.  The court will also dismiss plaintiff's negligent infliction of emotional distress claim against defendant Joel Vannocker.

The court will otherwise deny defendants' motions with respect to plaintiff's § 1983 official capacity claims and plaintiff's state law claims against the other defendants.

## FACTS

According to the allegations in plaintiffs' complaint, plaintiff was a high school student in Burlington, Kansas, when she was subjected to inappropriate conduct by her English teacher, defendant Joel Vannocker. She asserts claims against the school district, the school district superintendent Dale V. Rawson, and the high school principal Jim Kuhn for failing to prevent or stop the harassment.

Plaintiff's complaint alleges that during her junior and senior years in high school, defendant Vannocker made comments to one or more of his classes to the effect that he suffers from depression, has attempted suicide, has put a gun in his mouth and knows what a gun barrel tastes like, and that if he acts strangely he has not taken his Prozac. During plaintiff's junior year, she complained to a teacher that she felt a male teacher was staring at her, inappropriately putting his arm around her, and improperly touching her by leaning over her desk. That teacher reported plaintiff's complaint to defendant Kuhn. No discipline was imposed on or recommended for defendant Vannocker as a result of the above-described actions. During plaintiff's senior year, defendant Vannocker's actions continued. He made repeated comments to plaintiff that she is "beautiful" and "more mature than the other students." He gave plaintiff more attention than the other students, extended privileges to her, and gave her chocolate candy bars and heart-shaped candies.

In February of 2004, he placed a classified Valentine's Day advertisement in the Burlington High School newspaper. The ad was addressed to "Rebecca Gilliam" from a "Secret Admirer." It stated, "you make my heart sing." Soon after the newspaper was distributed, plaintiff was in the school administrative offices making copies for a teacher. Defendant Vannocker approached her from behind, leaned into her pressing his torso into her back, and whispered in her ear, "you know you do make my heart sing." Plaintiff felt physically threatened by his actions.

On another occasion, defendant Vannocker provided plaintiff with a packet of research materials for her senior paper, yet he did not provide any other students with research materials for their senior papers. Included in the materials that defendant Vannocker provided to plaintiff was a four-page advertisement for a male erection enhancement drug, Cialis. This advertisement did not relate to plaintiff's research project in any way.

On February 24, 2004, defendant Vannocker approached plaintiff in her study group class and told her that he wanted her to come to his classroom after school. Plaintiff was concerned by the angry or strange look on his face when he made this request, so she went to his classroom before school was dismissed. She asked him if everything was all right, and suggested to him that he looked mad. He explained that he was not mad, but that he just wanted to give her something. He handed her three typewritten poems folded up with a handwritten note clipped to the outside of the poems. This handwritten card was labeled to "Rebecca" on one side and said, "These pieces were inspired by you – if you would prefer <u>not</u> to read them

3

– just give them back to me. They are personal so please don't share them if you do read them. Please don't be 'frightened' by them. Many things inspire me, you are one of them."

Plaintiff returned to her classroom, read the handwritten note and opened the poems, and became extremely upset. After school was dismissed, she walked to her car, read the remaining two poems, and felt nauseous like she needed to throw up. Plaintiff began suffering extreme mental, emotional, and physical injuries, including nausea, insomnia, nightmares, vomiting, and difficulty eating. The next day, she told her father about the poems, the note, and defendant Vannocker's other unwelcome actions. Her father notified school officials of the poems and the note. Plaintiff filed a police report and protective order request against defendant Vannocker. Plaintiff alleges that she has suffered damages from the harassment in the form of inability to sleep, nightmares, crying, embarrassment, confusion, fatigue, pain, stomach pain, vomiting, diarrhea, muscle pain, depression, and suicidal thoughts. She also has been diagnosed with medical and psychological disorders arising from the harassment.

Based on these allegations, plaintiff asserts five claims: (I) violation of Title IX against the school district; (II) violation of § 1983 against the individual defendants; (III) negligent infliction of emotional distress against all defendants; (IV-VI) negligent hiring, supervision, and retention against the school district and against defendants Rawson and Kuhn; and (VII) violation of the Kansas Tort Claims Act (KTCA) against the school district.

The individual defendants ask the court to dismiss plaintiff's § 1983 individual capacity claims against them on the grounds of qualified immunity and her official capacity claims on the grounds that they are redundant of her claim against the school district. The defendants

further contend that, because they are entitled to qualified immunity on plaintiff's § 1983 claim, they are also entitled to what they refer to as "adoptive immunity" under K.S.A. § 75-6104(i) on her state law claims. Defendant Vannocker urges the court, if the court dismisses plaintiff's § 1983 claims, to decline to exercise supplemental jurisdiction over plaintiff's negligent infliction of emotional distress claim against him or, alternatively, to dismiss that claim on the grounds that the allegations in her complaint are insufficient to state a claim upon which relief can be granted.

**STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS**

A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to

support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted).

## DISCUSSION

For the reasons explained below, the court finds that plaintiff's § 1983 individual capacity claims must be dismissed because the individual defendants against whom those claims are asserted are entitled to qualified immunity. Plaintiff's § 1983 official capacity claims are not, however, subject to dismissal on the grounds that they are redundant. The court finds defendants' adoptive immunity arguments to be without merit and the court will therefore deny the motion of defendants USD #244, Rawson, and Kuhn as to plaintiff's state law claims. Lastly, the allegations in plaintiff's complaint with respect to her negligent infliction of emotional distress claim fail to satisfy the physical injury requirement under Kansas law and, as such, the court will grant defendant Vannocker's motion to dismiss that claim.

### I.   Plaintiff's § 1983 Substantive Due Process Claim

With respect to plaintiff's individual capacity claims against defendants Vannocker, Rawson, and Kuhn, the court must undertake a two-part analysis to determine whether those government officials are entitled to the protections afforded by qualified immunity. In evaluating a defendant's motion to dismiss on the grounds of qualified immunity, the court must first determine "whether the facts, as pled by the plaintiff, set forth a constitutional violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1284 (10th Cir. 2004). Second, if the plaintiff has alleged a constitutional violation, the court must determine whether that constitutional

violation was clearly established at the time of the defendant's conduct. *Id.* "Failure to satisfy either of these inquiries will result in dismissal in favor of the defendant." *Id.*

Thus, the court will first examine whether the facts alleged by plaintiff set forth a constitutional violation of plaintiff's substantive due process rights. The Due Process Clause provides that the government cannot "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. A substantive due process claim is "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (quotation omitted). "The concept of substantive due process is not fixed or final, but generally is accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996) (citations omitted). The standard for judging a substantive due process claim is whether the challenged government action would "shock the conscience of federal judges." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quotations omitted). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* (quotation omitted). Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* (quotation omitted). "A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983." *Abeyta*, 77 F.3d at 1257.

In this case, plaintiff has failed to allege conduct which rises above and beyond that of an ordinary tort claim such that it meets the heightened "shocks the conscience" standard applicable to substantive due process claims. Certainly, it is well settled that substantive due process "protects the liberty interest of a child in public school from sexual abuse." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001); *see also Abeyta*, 77 F.3d at 1255; *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 722 (3d Cir. 1989). The right to be free from such sexual abuse is grounded in a student's right to bodily integrity. *Abeyta*, 77 F.3d at 1255. Thus, conduct falling shy of sexual molestation or assault does not give rise to an actionable § 1983 substantive due process claim. *Id.* Here, plaintiff does not allege any such sexual molestation or assault. The only physical contact alleged in her complaint is that defendant Vannocker inappropriately put his arm around her, improperly touched her by leaning over her desk, and rubbed up against her one time when he pressed his torso into her back while she was making copies in the administrative office. While certainly unacceptable, this conduct does not rise to the level of shocking the conscience so as to violate her constitutional right to bodily integrity.

In this respect, the court finds plaintiff's reliance on *Stoneking* to be misplaced. *Stoneking* falls within the line of cases establishing that a student has a right to be free from sexual molestation or abuse. In that case, the high school band director had "used physical force, threats of reprisal, intimidation and coercion to sexually abuse and harass" the plaintiff student and "to force her to engage in various sexual acts." *Id.* at 722. The facts alleged in this

case are much more like those in *Lillard v. Shelby County Board of Education*, 76 F.3d 716 (6th Cir. 1996). In *Lillard*, the teacher had rubbed the student's stomach while in the hall at school, at the same time making a remark that would reasonably be interpreted as sexually suggestive. *Id.* at 726. The Sixth Circuit affirmed the district court's holding that this allegation was insufficient to state a claim for a substantive due process violation because, although wholly inappropriate, it did not amount to the type of inhumane abuse of official power that is literally shocking to the conscience. *Id.* Likewise, in this case, the incident where defendant Vannocker rubbed up against plaintiff consisted of a single isolated incident in a public place while making sexually suggestive remarks. The other alleged conduct consisted of him putting his arm around plaintiff and leaning over her desk. Although perhaps uncomfortable to a student, these actions are even more innocuous than those at issue in *Lillard* and are by no means uncommon. In this respect, the court finds an observation from the Eighth Circuit in a similar case to be apropos:

> It is a sad commentary on the state of our society, but allegations similar to those [of plaintiff] are commonplace in many Title VII hostile work environment cases that come before [the court], and they simply do not amount to behavior that the Constitution prohibits under the rubric of contemporary conscience shocking substantive due process. State tort law is, instead, a proper source of any remedy.

*Hawkins v. Holloway*, 316 F.3d 777, 785-86 (8th Cir. 2003). Accordingly, defendant Vannocker is entitled to qualified immunity and plaintiff's § 1983 individual capacity claim against him is dismissed on that basis.

For similar reasons, plaintiff's § 1983 individual capacity claims against defendants Rawson and Kuhn are also dismissed on the grounds of qualified immunity. Those cases in which school administrators have been subject to liability under § 1983 for a teacher's sexual harassment of a student are likewise limited to cases which involved, at a bare minimum, the teacher's sexual molestation or assault of the student. *See generally Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d at 443 (plaintiff sued school superintendent and principal in their supervisory capacity for failing to protect her from sexual molestation by a teacher); *Stoneking*, 882 F.2d at 720 (principal and assistant principal were not entitled to qualified immunity for injuries arising out of teacher's sexual assault of student). Thus, plaintiff has not set forth a constitutional substantive due process violation with respect to defendants Rawson and Kuhn. As such, they are also entitled to qualified immunity on plaintiff's § 1983 claim.

Defendants Rawson and Kuhn also seek dismissal of plaintiff's official capacity claims against them on the grounds that those claims are redundant of plaintiff's claims against the school district. *See, e.g.*, *Watson v. Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."). Plaintiff does not, however, assert a § 1983 claim against the school district. Consequently, her § 1983 official capacity claims against Rawson and Kuhn are not redundant of any claim against the school district. While plaintiff's § 1983 official capacity claims might be subject to dismissal for some other reason, dismissal is not warranted for the sole reason urged by defendants. Accordingly, this aspect of these defendants' motion to dismiss is denied.

**II.     Immunity on Plaintiff's State Law Claims**

Defendants also contend that they are entitled to dismissal of plaintiff's state common law claims on the grounds of what they refer to as "adoptive immunity" pursuant to K.S.A. § 75-6104(i). They contend that, under this statute, where a defendant is entitled to qualified immunity on a § 1983 claim, that defendant is also entitled to qualified immunity on factually related state law claims. The court disagrees.

The KTCA makes each governmental entity "liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. § 75-6103(a). The KTCA makes governmental liability the rule and immunity the exception. *Fettke v. City of Wichita*, 264 Kan. 629, 633, 957 P.2d 409, 412 (1998). The burden is upon the defendant to establish immunity under one or more of the immunity exceptions. *Id.* The immunity provision invoked by the defendants in this case provides as follows:

> A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from . . . any claim which is limited or barred by any other law or which is for injuries or property damage against an officer, employee or agent where the individual is immune from suit or damages . . . .

K.S.A. § 75-6104(i).

This statutory provision has been cited briefly on several occasions, but it has not received meaningful in depth treatment by any court. This is exemplified by the two cases relied upon by defendants. For example, in *Arceo v. City of Junction City*, 182 F. Supp. 2d

11

1062 (D. Kan. 2002), another judge in this district determined that the defendant was entitled to qualified immunity on the plaintiff's § 1983 claims, then stated that the defendant "is immunized from liability under the KTCA § 75-6104(i) because he has qualified immunity from suit pursuant to federal law under 42 U.S.C. § 1983." *Id.* at 1094. The court provided no further discussion of § 75-6104(i). Similarly, in *Fuentes ex rel. Fuentes v. Thomas*, 107 F. Supp. 2d 1288 (D. Kan. 2000), another judge in this district stated that the defendant "is immunized from liability under the KTCA § 75-6104(i) because he has qualified immunity from suit pursuant to federal law under 42 U.S.C. § 1983." *Id.* at 1305. Again, the court did not discuss § 75-6104(i) in any further detail. In *Grauerholz v. Adcock*, No. 00-1520-JTM, 2002 WL 226405, at *6 (D. Kan. Feb. 8, 2002), the same judge as in the *Arceo* case held that the plaintiff's negligent excessive force claim was subject to dismissal on qualified immunity grounds because "Kansas state law incorporates a version of qualified immunity under a catch-all provision in KSA 75-6104(i)." *Id.* at *6. On appeal, the Tenth Circuit affirmed, but on different grounds (namely, that the defendants' use of force was not excessive), and specifically stated that it was not reaching questions of Kansas law concerning the scope of qualified immunity under K.S.A. § 75-6104(i). *Grauerholz v. Adcock*, 51 Fed. Appx. 298, 301 n.3 (10th Cir. Nov. 20, 2002). The court believes that the other district court judges' statements in *Arceo*, *Fuentes*, and *Grauerholz* should not be taken out of context. But, in any event, this court is not bound by those court's rulings. Without delving into all of the precise contours of immunity under § 75-6104(i), suffice it to say at this procedural juncture that this

12

court is unpersuaded that § 75-6104(i) provides the type or degree of categorical immunity suggested by defendants.

In this case, then, the court will focus on whether defendants have met the burden of establishing they are entitled to immunity under § 75-6104(i). This provision of the KTCA provides immunity for "*any claim* which is limited or barred by any other law or which is for injuries or property damage against an officer, employee or agent where the individual is immune from suit or damages." § 75-6104(i) (emphasis added). Defendants are seeking immunity from plaintiff's state law claims for negligent infliction of emotional distress, negligent hiring, negligent supervision, negligent retention, and under the KTCA. Under the plain language of this immunity provision, defendants are not entitled to immunity unless these particular state law "claims" are limited or barred by some other law or unless they are immune from suit or damages on these claims. This might occur, for example, if the individual defendant does not owe a legal duty to the plaintiff, in which case § 75-6104(i) would afford immunity to both the individual defendant and the governmental entity. *See Lamb v. State*, 33 Kan. App. 843, —, 109 P.3d 1265, 1271-72 (2005) (where individual defendant did not owe the plaintiff a duty, both he and the governmental entity were afforded immunity under § 75-6104(i)); *see also* William E. Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 U. Kan. L. Rev. 939, 954 (2004) (explaining that § 75-6104(i) would encompass cases in which a negligent governmental employee enjoyed common law privileges to specific torts). This provision might also provide immunity to the school district if its liability were predicated on a § 1983 claim against one of the individual

13

defendants because the individual defendants are entitled to qualified immunity on plaintiff's § 1983 claim. *See* Westerbeke, *supra*, at 954 (explaining that probably the most common application of § 75-6104(i) would be that individuals who receive qualified immunity in § 1983 actions would also "limit any claim against the employee's governmental employer"). Granting immunity under these circumstances would "ensure that a governmental employer is not held liable for any damages that could not legally be assessed against the employee, if the claim were brought against the employee rather than against the governmental entity." *Id.*

But categorically extending defendants' immunity from plaintiff's § 1983 constitutional claims to all factually related state law claims would do nothing to further the purposes of the KTCA. The general principle of the KTCA is to impose on governmental entities the same degree of liability for their employees' negligence as the law imposes on private employers. Unlike ordinary state tort laws to which the KTCA applies, § 1983 is not "a body of general federal tort law." *Paul v. Davis*, 424 U.S. 693, 701 (1976). A state common law cause of action is an entirely separate and distinct claim from the § 1983 constitutional claim that is at issue in this case. The standard of liability for plaintiff's constitutional claim is much higher than that for plaintiff's asserted tort claims. *See Abeyta*, 77 F.3d at 1257 ("A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983."). To categorically extend immunity under these circumstances would have the broad reaching effect of immunizing governmental entities from liability for all viable state law tort claims any time the facts fall short of the often heightened standards of liability applicable to

constitutional claims. Such a result would be inconsistent with the well settled principle under the KTCA that governmental liability is the rule and immunity the exception.

Thus, defendants' motions are denied insofar as they contend that they are entitled to qualified immunity on plaintiff's state law claims. In so holding, the court wishes to emphasize that it is not definitively resolving the issue of whether defendants are in fact entitled to immunity under § 75-6104(i). The court is simply holding they are not entitled to immunity under § 75-6104(i) based on the sole reason urged by defendants—that is, simply because they are entitled to qualified immunity on plaintiff's § 1983 claims.

### III.     Negligent Infliction of Emotional Distress Claim Against Vannocker[1]

Defendant Vannocker argues that the court should decline to exercise supplemental jurisdiction over plaintiff's negligent infliction of emotional distress claim against him because the court has dismissed plaintiff's § 1983 substantive due process claim, which is plaintiff's only other claim against him. The court construes this argument as seeking to invoke 28 U.S.C. § 1367(c)(3), which provides that the court may decline to exercise supplemental jurisdiction over a claim if the court has "dismissed all claims over which it has original jurisdiction." Here, however, the court has not dismissed all factually related claims

---

[1] The court declines to convert defendant Vannocker's motion into a motion for summary judgment notwithstanding the fact that plaintiff has presented materials outside the pleadings. Although the court is not considering those materials in resolving defendant Vannocker's motion, the court notes that it has reviewed those materials and does not find that they support the notion that plaintiff suffered the type of contemporaneous physical injury that is required to support a negligent infliction of emotional distress claim under Kansas law. Thus, the court would reach the same result either way.

over which it has original jurisdiction. Plaintiff has also asserted a Title IX claim and the school district has not sought dismissal of that claim. *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("*When all federal claims have been dismissed,* the court may . . . decline to exercise jurisdiction over any remaining state claims." (emphasis added)). Thus, dismissal under § 1367(c)(3) is not warranted at this time.

Defendant Vannocker also asks the court to dismiss plaintiff's negligent infliction of emotional distress claim against him on the grounds that plaintiff's complaint fails to state a claim upon which relief can be granted.[2] There is no recovery for negligent infliction of emotional distress under Kansas law unless the defendant's negligence is accompanied by or results in physical injury to the plaintiff. *Hoard v. Shawnee Mission Med. Ctr.*, 233 Kan. 267, 274, 662 P.2d 1214, 1219-20 (1983). The physical injury complained of must occur contemporaneously with or shortly after the incident causing the emotional distress. *Id.* at 275, 662 P.2d at 1220. In this case, plaintiff alleges that she suffered from extreme mental,

---

[2] Defendant Vannocker raised this argument in the second motion he filed with the court. Plaintiff contends that he is precluded from raising this argument by way of a second 12(b) motion. Both parties, however, have misconstrued the nature of defendant Vannocker's motions. Defendant Vannocker filed his current motions (Docs. 32 & 49) on August 23, 2005, and September 15, 2005, which was months after he filed his answer on April 18, 2005 (Doc. 4). As such, his motions are not Rule 12(b)(6) pre-answer motions, *see* Rule 12(b)(6) ("A motion making any of these defenses shall be made before pleading . . . ."), but rather Rule 12(c) motions for judgment on the pleadings, *see* Rule 12(c) ("After the pleadings are closed . . . ."). As such, defendant Vannocker's defenses of failure to state a claim upon which relief can be granted are not subject to the consolidation and waiver principles of Rules 12(g) and (h). *See* Rule 12(g) (consolidation requirement does not apply to motions listed in Rule 12(h)(2)); Rule 12(h)(2) ("A defense of failure to state a claim upon which relief can be granted . . . may be made . . . by motion for judgment on the pleadings . . . .").

emotional, and physical injuries in the form of nausea, insomnia, nightmares, vomiting, difficulty eating, crying, fatigue, pain, stomach pain, diarrhea, muscle pain, depression, and suicidal thoughts. Such generalized physical symptoms fail to satisfy the physical injury rule under Kansas law. *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667, 669 (1988) (physical injury rule not satisfied by recurring nightmares and visiting a doctor for depression); *Hopkins v. State*, 237 Kan. 601, 612-13, 702 P.2d 311, 319-20 (1985) (same; insomnia, headaches, weight gain, and general physical upset); *Reynolds v. Highland Manor, Inc.*, 24 Kan. App. 2d 859, 861-62, 954 P.2d 11, 13-14 (1998) (same; headaches, diarrhea, nausea, crying and shaking, and was treated by a psychiatrist following the incident). Plaintiff's most colorable basis for this claim is her allegation that she suffered from vomiting. *Cf. Ely v. Hitchcock*, 30 Kan. App. 2d 1276, 1290, 58 P.3d 116, 125-26 (2002) (noting that "vomiting may be the physical impact that a case requires," but finding that vomiting without seeking counseling for the alleged trauma did not satisfy the physical injury requirement). But, even with respect to her allegations of vomiting, there are no factual allegations in her complaint from which it can be inferred that she vomited contemporaneously with or shortly after any incidents of harassment by defendant Vannocker. The most specific allegation in this respect is that after school was dismissed on the day she read the note and poems from defendant Vannocker she "immediately felt nauseous and like she needed to throw up." (Compl. (Doc. 1), ¶ 34, at 5.) Her complaint does not, however, allege that she actually vomited contemporaneously with or shortly after any incident of harassment. Absent any allegation making a sufficient temporal connection between an incident of harassment and her complaints

17

of vomiting, then, her complaint fails to state a claim upon which relief can be granted for negligent infliction of emotional distress.

Plaintiff further contends that defendant Vannocker's actions were wanton. Kansas law does permit recovery of damages for mental distress without physical injury in appropriate circumstances where the injurious conduct is wanton. *Hoard*, 233 Kan. at 274, 662 P.2d at 1220; *Lantz v. City of Lawrence*, 232 Kan. 492, 500, 657 P.2d 539, 545 (1983). In this case, however, plaintiff's complaint makes no such allegation. Accordingly, the court will grant defendant Vannocker's motion to dismiss plaintiff's negligent infliction of emotional distress claim. In doing so, however, the court notes that is not foreclosing plaintiff from seeking leave to assert an intentional tort claim for emotional distress if counsel believes plaintiff has a good faith basis for such a claim. *See* Fed. R. Civ. P. 11(b).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Vannocker's Motion to Dismiss (Doc. 32) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Defendants Rawson, Kuh, and USD #244 (Doc. 43) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that Defendant Vannocker's Second Motion to Dismiss or Alternatively First Motion for Judgment on the Pleadings (Doc. 49) is granted.

**IT IS SO ORDERED** this 27th day of October, 2005.

                                                 s/ John W. Lungstrum
                                                 John W. Lungstrum
                                                 United States District Judge